Opinion of the court delivered by
Judge Whyte.
The principal question presented on this record, (not noticing inferior one’s for the present,) is, whether the plaintiff is entitled to recover upon the case made by his declaration. He founds his title to recover upon an agreement in writing, between himself on the one part, and the father of the apprentice, David, on the other, whereby it was stipulated on the part of the father, to bind his two sons, David and William, to the plaintiff, as apprentices to learn the art of printing, &c. as set forth in the declaration, &c. &c. The first question arising here is, what interest did the plaintiff, Stringfield, acquire in and to the son, David, by the said agreement? And here it will be remarked, that in the present case of a contract of apprenticeship *550 made by the father, thereby binding Ms son, it is considered that there is no difference between a deed that is under seal, and a written agreement that is not under seal, but only signed by the parties, as to the rights created and the liabilities incurred by the instrument purporting to constitute that apprenticeship. No authority or book was cited on the argument, proving that the plaintiff, Stringfield, acquired any right to the person or to the services of the son David, by the above agreement or deed, admitting it to be a deed, and this court have not been able to find any. On the contrary, it is laid down by Kent in his commentaries, (vol. 2, page 212,) where he says, “the father has no authority under the statute (and the later English cases say he has no authority even at common law,) to bind his infant son an apprentice, without his assent.” And in Barnwell and Alderson’s Rep. page 584, it is laid down, that “there is no sufficient authority for saying, that a father, at the common law, can bind his infant son an apprentice without his assent testified by the execution of the indenture.” These authorities prove, that the agreement, deed or contract of the father, Daniel Clayton, passed no interest in his infant son David, to the plaintiff Stringfiled, at the common law. If any interest whatever was acquired by the agreement or deed, it must be by statute. There is no statute of the parent state, North Carolina, or of the State of Tennessee, that reaches the present case.
It is true, in England, in the reign of Queen Elizabeth, and before the colonization of this country, statutes were enacted on this subject, and added to in every succeeding reign almost without exception, from that time down to the present, as the supposed public policy of that country required; rearing up a system believed by them to¡be necessary and proper for the attainment of that degree of perfection and excellency in the arts, trades and mysteries referred to in them, which as a manufacturing people, might conduce to their success and prosperity. These statutes gave an interest in an apprentice constituted under their provisions, that his personal attendance to his *551 business under his master was ensured and compelled “ under the rigours of a house of correction. Accordingly, under these statutes an infant may be taken and bound an apprentice to a trade for the space of seven years without his consent, and any man (as a master,) against his will might he compelled to take this infant as an apprentice. But none of these statutes ever were received into this country, or their obligation acknowledged; neither can deductions from them militating against the principles of the common law, be applicable here. Upon this view of the plaintiff’s case, his action is not sustainable, either by the common law or by statute. He has no right either to the custody of the person, or the receipt of the services of David Clayton. The latter might have left the printing office and business of the plaintiff the first day he went there, or on any intervening day or hour between that and his final departure, without the power of being reclaimed. This makes a final disposition of the present cause, and of the plaintiff’s rights as against the defendant Heisbell; and inasmuch as it appears by the last count in the,plaintiff’s declaration, where his case is specially set forth, that he hath no cause of action, it is unnecessary to notice the objections taken to the correctness of the charge of the judge, or to the propriety of the finding of the jury; for however exceptionable (which is not admitted) either or both of these may be, it is immaterial, as the plaintiff in his declaration shows he has no title to recover.
The above view taken of this cause is considered to be the right one; but as it is different from the one presented on the argument, on behalf of the plaintiff by his counsel, a short notice of it will be taken, for the purpose of ascertaining whether it will authorize a different disposition of this cause, from that above entertained and expressed. The plaintiff’s argument exhibits a view of this case, which considers the binding of David Clayton, the son, by the father, to the plaintiff, Stringfield, as a valid contract, an act transferring an interest in the appren *552 tice, entitling him as a master to the custody of the person, as well as the profits of his labour, and conferring upon him also, as a consequence of such right, in the case 0f tlie departure of the apprentice from his business, the right of recaption; hence the proceeding by the notices set forth in the record, from Crozier and Stringfield to the defendant Heiskeii. \And it is further contended for the plaintiff, that by virtue of the contract with the father, he hath not only the interest in the son, claimed by him, but also by law, the power of assigning or transferring this interest to another person, which he exercised on the present occasion in favour of Crozier; and to support Salk. 68, is cited and relied upon. To this argument it is answered, that admitting the proposition to be correct, (which cannot be so) that the contract of the father transferred to the plaintiff an interest in the son, entitling the plaintiff to the custody of the person of the son and the proceeds of his service, yet it does not follow as a consequence of such interest, that he could assign and transfer it to another. I. Why? Because the interest is a personal trust and confidence reposed in and peculiar to the depository or transferer, in its nature incapable of assignment. Thus, it is laid down in 4 Ba. Abr. (Wilson’s Edition, p. 577,) “the placing out an apprentice to a particular person, arises from an esteem and good opinion of the party to whom he is so committed, that he will not only instruct him in his trade or calling, but will also be careful of his health and safety; and therefore the law has made it such a personal trust or confidence? that the master cannot assign or transfer him over to another.”
But this law is attempted to be evaded by the provision in the instrument making the apprenticeship, which says: “Thomas Stringfield on his part promises to learn them? (or have them learned) as much as they will be able,” &c., &c. It is argued, that under these words, “or have them learned,” the power of assignment or transfer is given to the master, Stringfield. It is a sufficient answer to this *553 exposition, that it is not a true construction of the agree* . , , , . ment, or articles of apprenticeship. An assignment or transfer of the apprentices to another person, never was in the contemplation of the parties; this is further evidenced bj the letter of the father to the plaintiff, were it necessary to have recourse to it, which it is not for this purpose. These words “or have them learned,” were intended to cover personal defects if any, of the party String-field, in not being a printer (properly so called) himself, and to authorize the communication of that part of the master’s duty by another. But it was not intended thereby to dispense with the other duties of the master, as his personal care and inspection, promotive of the apprentice’s morals, health and safety, which might by possibility be endangered by a removal and transfer to another master, and to another (though similar) establishment. Such is the understanding of the law on this point, and is so expressed in the book above cited, in the following words: “the master must also have the apprentice under liis own care and inspection, and cannot send him abroad, though under the pretence of improvement.”
But it is further argued for the plaintiff, that suppose the assignment to Crozier and transfer of the apprentices to him, accompanying the sale of plaintiff’s printing establishment, void; then it follows, that the plaintiff’s original rights remain, which rights entitling him to the custody of the persons of his apprentices, enable him to support this suit against the defendant Heiskell. The plaintiff’s right to support this suit is founded upon his rights and duties, as a trustee; and to execute his duty, it is necessary for him to have the custody oí the persons of the apprentices under his own inspection and care; the defendant therefore ought not to detain them, but ought to deliver them. All this would have been right, upon a proper discharge of the trust and duty on the part of the plaintiff. But in what situation has he placed himself? He has committed a breach of his trust by surrendering or transferring the persons of his apprentices to another man, and parting with the possession, against the obliga- *554 ti on of his duty; and this by solemn contract, for valuable consideration, and he now comes into court, in the face of his breach of duty, in the face of his own contract to the contrary, and makes his claim. He cannot be heard. Let the judgment of the circuit court be affirmed.
Judgment affirmed.